J-S15002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF TIMOTHY P. LUCAS A/K/A TIMOTHY LUCAS, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: PATRICIA ANN NEWRANSKY, ADMINISTRATRIX, C.T.A. FOR THE ESTATE OF TIMOTHY P. LUCAS A/K/A TIMOTHY LUCAS | : | |
| | : | |
| | : | |
| | : | No. 1137 WDA 2024 |

Appeal from the Order Entered August 30, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 02-23-1317

BEFORE:   OLSON, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: JULY 1, 2025**

Appellant, Patricia Ann Newransky, as administratrix *cum testemento annexo* for the Estate of Timothy P. Lucas ("the Estate"), appeals from the August 30, 2024 order entered in the Orphans' Court Division of the Court of Common Pleas of Allegheny County.  In its order, the orphans' court, *inter alia*, interpreted the last will and testament ("the Will") of Timothy P. Lucas ("Testator") and directed the distribution of the Estate's residue between Testator's siblings.[1]  After careful review, we affirm the order, in part, and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] At the time of Testator's death, he was survived by his sister, Patricia Ann Newransky ("Newransky").  He was preceded in death by his brother, Eugene D. Lucas ("Eugene Lucas"), and a second sister, Lorraine McSteen ("Lorraine McSteen").  Eugene Lucas was survived by four issue, and Lorraine McSteen was survived by five issue, one of whom is Jeffrey McSteen ("Jeffrey McSteen").

vacate the order, in part, and remand the case for the entry of a supplemental order in accordance with this memorandum.

The orphans' court summarized the factual and procedural history as follows:

> [Testator] died testate on January 26, 2023. On February 22, 2023, [Appellant] petitioned the register of wills [for Allegheny County, Pennsylvania] to issue a citation directed to [Testator's attorney] to produce the original [Will]. In a joint response to the petition, [Testator's attorney] and Jeffrey McSteen[] asserted and averted [as] new matter that the language of the Will expressly overrode Pennsylvania's Anti-Lapse Statute, 20 Pa.C.S.[A.] § 2514(9) [(the "Anti-Lapse Statute")[2]] with respect to the

---

[2] Section 2514(9) of the Pennsylvania Probate, Estates and Fiduciaries Code, also known as the "Anti-Lapse Statute," states as follows:

### § 2514. Rules of interpretation

In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

. . .

**(9) Lapsed and void devises and legacies; substitution of issue.** - A devise or bequest to a child or other issue of the testator or to his [or her] brother or sister or to a child of his [or her] brother or sister whether designated by name or as one of a class shall not lapse if the beneficiary shall fail to survive the testator and shall leave issue surviving the testator but shall pass to such surviving issue who shall take *per stirpes* the share which their deceased ancestor would have taken had he [or she] survived the testator: Provided, That such a devise or bequest to a brother or sister or to the child of a brother or sister shall lapse to the extent to which it will pass to the testator's spouse or issue as a part of the residuary estate or under the intestate laws.

20 Pa.C.S.A. § 2514(9).

bequest to [Testator's] predeceased mother, but such intent did not exist for the bequests to [Testator's] siblings.

On March 17, 2023, Jeffrey McSteen [] petitioned the register of wills for [a] citation to be issued and directed to [] Appellant to show cause why [Jeffrey McSteen] should not be appointed [administrator] of [] Testator's Estate. After holding a conference before [a] hearing officer[,] the hearing officer ordered the parties [to] file briefs addressing the issues of who should be appointed administrator [or administratrix] of the Estate and whether the Anti-Lapse Statute applies. The hearing officer subsequently issued an opinion and order, holding that [] Appellant shall be appointed [administratrix] pursuant to 20 Pa.C.S.[A.] § 3155(b) and that the Anti-Lapse Statute applies with respect to the inheritance under the Will. The hearing officer ordered that [] Appellant receive 1/3 of the residue and the children of the deceased siblings receive the remaining 2/3 of the [residue].

On June 28, 2023, letters of administration [*cum testomento annexo*] were granted to [] Appellant.

On May 29, 2024, [Jeffrey McSteen] filed [a "]petition for interpretation of last will and testament of Timothy Lucas: Application of 20 Pa.C.S.A. § 2514["] with [the orphans'] court. The parties filed briefs on the issue and a hearing was held on August 6, 2024. By stipulation, the parties [agreed to forgo] any external testimony and evidence, as the issue at bar was purely an issue [to be decided] as a matter of law.

Orphans' Court Opinion, 11/15/24, at 2-3 (extraneous capitalization and record citations omitted).

On August 30, 2024, the orphans' court granted Jeffrey McSteen's petition seeking an interpretation of the Will and found that the "Testator's use of the word 'among' [in the Will] was insufficient[,] as a matter of law[, to] indicate with reasonabl[e] certainty that [Testator] intended to override the Anti-Lapse Statute." Orphans' Court Order, 8/30/24. Based upon its finding that the Anti-Lapse Statute applied, the orphans' court held that, "[a]s

- 3 -

a matter of law, the Testator's intent [was to divide] the residue [of the Estate] 'equally among' the class [pursuant to a] *per capita* distribution [scheme]."

*Id.* The orphans' court ordered that the residue of the Estate be distributed as follows:

> (a) 1/3 of the residuary estate to [Newransky]; and
>
> (b) 2/3 of the residuary estate to the issue of Eugene Lucas (Deceased) and Lorraine McSteen (Deceased), *per capita*.

*Id.* This appeal followed.[3]

Appellant raises the following issues for our review:

> 1. Whether the [orphans'] court erred in finding that [Testator's] use of the word "among" is insufficient as a matter of law to override [] the Anti-Lapse Statute[?]
>
> 2. Whether the [orphans'] court erred in not finding an ambiguity in the [Testator's Will] before applying [] the Anti-Lapse Statute[?]
>
> 3. Whether the [orphans'] court erred in finding that [Testator's] intent was not reasonably certain from the [Will] and applying [] the Anti-Lapse Statute[?]
>
> 4. Whether the [orphans'] court erred in applying [] the Anti-Lapse Statute[] retroactively to the [Testator's Will?]
>
> 5. Whether the [orphans'] court erred in finding that [Testator's] intent in dividing the residue of his estate "equally among" his siblings favored a *per capita* distribution but ordered a *per stirpes* distribution.

Appellant's Brief at 9.

_____

[3] Both Appellant and the orphans' court complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant's issues, *in toto*, challenge the orphans' court's interpretation of the Testator's Will and the applicability of the Anti-Lapse Statute. It is well-established that a challenge to the interpretation of a will raises a question of law for which our standard of review is *de novo* and our scope of review is plenary. ***In re Est. of McFadden***, 100 A.3d 645, 650 (Pa. Super. 2014) (*en banc*).

> It is [] hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his [or her] intent must be gathered from a consideration of (a) all the language contained in the four corners of [the] will[,] (b) his [or her] scheme of distribution[,] (c) the circumstances surrounding [the testator] at the time he [or she] made [the] will[,] and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain[.]

***Id.*** (citations omitted). "When a will is ambiguous on its face, [the orphans'] court may consider extrinsic evidence to glean the testator's intent." ***Id.*** "The words of a will are not to be viewed in a vacuum, and specific words or phrases will be rejected when they subvert or defeat the testator's whole testamentary scheme and divest the bounty from those whom he [or she] obviously intended to benefit." ***Murphy v. Karnek***, 160 A.3d 850, 862 (Pa. Super. 2017) (citation and original quotation marks omitted).

Generally, "[a devise or] legacy lapses when the [devisee or] legatee dies in the lifetime of testator." ***In re Est. of Harper***, 975 A.2d 1155, 1159 (Pa. Super. 2009), *citing* ***In re McFerran's Est.***, 75 A.2d 759, 762 (Pa. 1950). Pursuant to Pennsylvania's Anti-Lapse Statute, however, "a devise or

legacy in favor of a child or lineal descendant of the testator does not lapse where such devisee or legatee leaves issue surviving." **Harper**, 975 A.2d at 1159; **see also** 20 Pa.C.S.A. § 2514(9). The purpose of the Anti-Lapse Statute "is to reduce the incidence of lapses, which are generally disfavored in the law." **Harper**, 975 A.2d at 1160. "Thus, to preclude operation of the [Anti-Lapse Statute], a testator's contrary intent must appear with reasonable certainty[ and] must be plainly indicated." **Id.** (citations omitted).

Here, the crux of Appellant's argument is that she is entitled to receive 100% of the residue of Testator's Estate as the only surviving sibling of Testator. Appellant's Brief at 13-19. Appellant asserts that the orphans' court erred in applying the Anti-Lapse Statute in reaching its decision because Testator's use of the phrase "equally divided among" as it pertains to the devise of Testator's Estate to his brother and two sisters is clear and unambiguous and the siblings must survive Testator to inherit. **Id.** at 16. Appellant contends that, absent a finding of ambiguity, it was unnecessary for the orphans' court to look to the Anti-Lapse Statute when ordering the distribution of Testator's Estate. **Id.** at 16. Moreover, Testator's use of the phrase "equally divided among" constitutes evidence of Testator's intent to defeat the Anti-Lapse Statute. **Id.** at 15 (stating, "the absence of any language suggesting an alternative distribution or substitution indicates that [Testator] did not intend for the issue of predeceased siblings to inherit"). In the alternative, Appellant asserts that the orphans' court erred in retroactively applying the Anti-Lapse Statute, which was enacted in July 1, 1972, to the

Will, which was executed in 1970. *Id.* at 21 (stating, "[r]etroactively applying the Anti-Lapse Statute undermines the fundamental principle that a testator has the right to distribute [his or her] estate as [he or she] see[s] fit").

The orphans' court explained its decision to grant Jeffery McSteen's petition for interpretation of the Will and order the distribution of Testator's Estate, as set forth *supra*, as follows:

> In the present matter, it is neither plainly indicated nor reasonably certain from the language "be equally divide[d] among brother [Eugene Lucas and my sisters [Lorraine McSteen] and [Newransky]" that [] Testator intended to override the Anti-Lapse Statute with respect to the residuary bequest. [Appellant's] reliance on the word "among" to plainly demonstrate an intent to override the Anti-Lapse Statute seems misplaced. To evidence contrary intent, the language to override the statute must be plain and reasonably clear, including survivorship language such as "provided this person is living at my death" or "if this person does not survive me." Absent contrary intent by [] Testator, the present matter is a [] scenario [clearly] anticipated by the Anti-Lapse Statute, where the surviving issue of a deceased sibling beneficiary would take under a bequest to the latter.

Orphans' Court Opinion, 11/15/24, at 4-5 (original brackets omitted). In its opinion, the orphans' court acknowledged its error in ordering a *per capita* distribution of the Estate's residue as it pertains to the issue of Eugene Lucas and Lorraine McSteen. *Id.* at 5-6; *see also* Orphans' Court Order, 8/30/24. The orphans' court stated that, under the Anti-Lapse Statute, the issue of Eugune Lucas should inherit one-third of the Estate *per stirpes* and the issue of Lorraine McSteen should inherit one-third of the Estate *per stirpes*. Orphans' Court Opinion, 11/15/24, at 6.

Upon review, we discern no abuse of discretion or error of law in the orphans' court's determination that the Testator, through use of the term "equally divided among," did not intend to override the Anti-Lapse Statute. We find the case *sub judice* to be analogous to this Court's decision in ***Harper***, ***supra***. In ***Harper***, the testator devised the residue of his estate to his wife, if she survived the testator. ***Harper***, 975 A.2d at 1159. In the event that the testator's wife predeceased the testator, the testator devised the residue of his estate to his two sons to "share and share alike." ***Id.*** At the time of the testator's death, the testator's wife and one son had predeceased the testator. ***Id.*** at 1160. The deceased son was survived by his son, the testator's grandson. Thus, the testator, at the time of his death, was survived by his son and grandson. ***Id.*** This Court in ***Harper***, ***supra***, found that use of the term "share and share alike" did not indicate with reasonable certainty that the testator intended to override the Anti-Lapse Statute. ***Id.*** Rather, as the ***Harper*** Court explained, the term "'share and share alike,' standing alone, only evidences an intent on how the property shall ultimately be divided, and not who will ultimately take" the property. ***Id.*** at 1161 (emphasis omitted). The ***Harper*** Court reasoned that "the testator did not use the terms '*per capita*' or '*per stirpes*' in his [w]ill, nor did he use survivorship language such as would leave little doubt about his intent to override the [A]nti-[L]apse [S]tatute." ***Id.*** (noting that, the testator used survivorship language in the bequest to his wife, which clearly demonstrated that the testator "knew how to override the statute had he intended to do so"). The ***Harper*** Court further

reasoned that the testator "had almost five years after the death of his son to revise the [w]ill if he did not want his son's share to pass through" in accord with the Anti-Lapse Statute. *Id.*

In the case *sub judice*, Testator devised his entire Estate to his mother, if she survived Testator. In the event Testator's mother predeceased him, his Estate was to be "equally divided among" his brother and two sisters. In accord with our prior conclusion in **Harper**, **supra**, we find that the term "equally divided among" evidences **how** the Estate was to be divided but does not control **who** will ultimately receive the residue of the Estate. **See Harper**, 975 A.2d at 1161. At the time Testator created his Will in 1970, Pennsylvania had a long history of employing anti-lapse statutes to avoid intestacy and, therefore, the orphans' court did not retroactively apply the current version of the Anti-Lapse Statute in the case *sub judice*.[4] Testator's use of the phrase

---

[4] Section 15(b) of the Wills Act of June 7, 1917, P.L. 403, 20 P.S. § 181 *et seq.* provided, *inter alia*, that

> Where any testator shall not leave any lineal descendants who would receive the benefit of any lapsed or void devise or legacy, no devise or legacy made in favor of a brother or sister of such testator shall be deemed or held to lapse or become void by reason of the decease of such devisee or legatee in the lifetime of the testator, if such devisee or legatee shall leave issue surviving the testator; but such devise or legacy shall be good and available in favor of such surviving issue, with like effect as if such devisee or legatee had survived the testator, unless the testator shall in the will direct otherwise.

"equally divided among" does not indicate with reasonable certainty that

Testator intended to override the Anti-Lapse Statute.  Instead, this phrase

simply indicates that each of Testator's siblings (one brother and two sisters)

were to receive equal distributions of the residue of the Estate.  It is clear that

Testator understood the implications of survivorship, as he specified that, in

the event his mother did not survive him, his Estate would then pass in equal

_____

*In re Hammond's Est.*, 157 A. 17 (Pa. 1931) (ellipses omitted); *see also In re Sibek's Est.*, 150 A. 101, 102 (Pa. 1930) (stating, the Wills Act of June 7, 1917 was a "compilation of then existing laws").

The Wills Act of June 7, 1917 was repealed and subsequently replaced by the Wills Act of April 24, 1947, P.L. 89, 20 P.S. §§ 180.1 to 180.23.  Section 14 of the Wills Act of April 24, 1947 stated, in pertinent part,

> In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:
>
> . . .
>
> (8) Lapsed and void devises and legacies. - Substitution of issue. A devise or bequest to testator's brother or sister shall not lapse if the beneficiary shall fail to survive the testator and shall leave issue surviving the testator but shall pass to such surviving issue[.]

Wills Act of April 24, 1947, P.L. 89, 20 P.S. §§ 180.14(8) (original brackets and some ellipses omitted).

The Wills Act of April 24, 1947 was repealed and replaced, without change, by the Wills Act of June 30, 1972, P.L. 508, No. 184, 20 P.S. § 2501 *et seq.*  *In re McCaffrey Est.*, 309 A.2d 539, 541 n.4 (Pa. 1973).

As such, an anti-lapse statute was enacted at the time Testator executed the Will and it cannot be said that the orphans' court retroactively applied an already enacted statute.

shares to his three siblings. Testator did not, however, use similar survivorship language when referencing the bequests to his siblings, indicating a clear intent that his siblings were to receive equal, *per capita* shares of his Estate regardless of whether, or not, they survived Testator. Moreover, Testator had more than 30 years after the death of his brother, Eugene Lucas (d. 1992), and more than 7 years after the death of his sister, Lorraine McSteen (d. 2015), to revise his Will if he did not want his deceased siblings' shares to pass to their issue. Therefore, we discern no abuse of discretion or error of law in the orphans' court's determination that the issue of Eugene Lucas and Lorraine McSteen were to receive a distribution of the Estate's residue.

We do, however, find that the orphans' court erred, as a matter of law, in determining that the two-thirds distribution to the issue of Eugene Lucas and Lorraine McSteen was to be *per capita*. **See** Orphans' Court Order, 8/30/24 (stating, "2/3 of the residuary estate to the issue of Eugene Lucas (Deceased) and Lorraine McSteen (Deceased), *per capita*"). Pursuant to the Anti-Lapse Statute, the surviving issue of the Testator's siblings are to take *per stirpes* the share which their deceased ancestor would have taken had he or she survived the Testator. **See** 20 Pa.C.S.A. § 2514(9). Pursuant to the Testator's Will, Eugene Lucas was entitled to a one-third share of the Estate. Therefore, his four issue are entitled to receive a one-third distribution divided equally among the four individuals. Lorraine McSteen was also entitled to a

one-third share of the Estate and her five issue, similarly, are entitled to receive her one-third distribution divided equally among the five individuals.

For the reasons set forth herein, we affirm, in part, the August 30, 2024 order, insofar as it determined that Testator did not intend to override the Anti-Lapse Statute concerning the bequests to his siblings. We vacate, in part, the August 30, 2024 order to the extent it directs that two-thirds of the Estate's residue be distributed to the issue of Eugene Lucas and Lorraine McSteen *per capita*. We remand the case so the orphans' court may enter a supplemental order directing that the distribution to the issue of Eugene Lucas and Lorraine McSteen be made on a *per stirpes* basis in accord with this decision.

Order affirmed, in part, and vacated, in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/1/2025

- 12 -